**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAR - 8 2010**

GREGORY C. LANGHAM
CLERK

SECURITIES & EXCHANGE COMMISSION, §
§
Plaintiff, §
§
v. §
§ MISC. ACTION No. ____
ALAN TODD MAY and §
PROSPER OIL & GAS, INC. a/k/a §
PROSPER ENERGY, INC. §
§
Defendants, §
§

# 10-MC-0016

## NOTICE OF RECEIVERSHIP

NOW COMES Kelly M. Crawford, by and through his attorneys, Scheef & Stone, L.L.P.,

as the Court-appointed Receiver for Alan Todd May and Prosper Oil & Gas, Inc., a/k/a Prosper

Energy, Inc., and pursuant to 28 U.S.C. § 754 provides notice of his appointment as Receiver and

files with the Clerk a copy of the Complaint (attached as **Exhibit A**) and the Order Appointing

Receiver (attached as **Exhibit B**).

Dated: March 5, 2010

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By:   *Charlene Koonce*
Charlene C. Koonce
State Bar No. 11672850
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: 214.706.4200
Telecopier: 214.706.4242
**ATTORNEYS FOR RECEIVER**
**KELLY M. CRAWFORD**

---

**NOTICE OF RECEIVERSHIP**                                          PAGE SOLO



CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2010 MAR -2 PM 3: 12

DEPUTY CLERK _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | **3-10CV-425-L** |
| § | |
| ALAN TODD MAY and § | Civil Action No.: |
| PROSPER OIL & GAS, INC. a/k/a § | |
| PROSPER ENERGY, INC. § | |
| § | |
| § | |
| Defendants. § | |
| § | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### SUMMARY

1.      Since at least 2008, through the present, Defendant Alan Todd May, a felon with

a long criminal history of theft and fraud, and his company Prosper Oil & Gas, Inc. a/k/a Prosper

Energy, Inc., have raised at least $6 million from at least 99 investors throughout the United

States in fraudulent offerings of securities. The securities Defendants have offered and sold are

fractional, undivided royalty interests in oil-and-gas properties. Defendants never registered

their securities transactions with the Commission.

2.      May, directly and through Prosper, attracted potential investors through classified

advertisements in various business publications, including *The Wall Street Journal* and *Barron's*,

and through postings on the auction website eBay. In the advertisements, and in correspondence

with investors, Defendants told investors that they were selling royalty interests in "hot



propert[ies]" with historic and anticipated annual returns on the royalty interests ranging from 25% to at least 38%. Defendants made some distributions to investors, but to do so, they used money they raised from other investors to fund the bulk of the payments – *i.e.*, *Ponzi* payments. Defendant falsely characterized the distributions they made to investors as returns on royalty interests from oil-and-gas production, when, in reality, they were mostly *Ponzi* payments.

3.      By engaging in the conduct described in this Complaint, Defendants participated in a fraudulent scheme in which they offered and sold securities in unregistered transactions, in violation of Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e], and violated, and continue to violate, the anti-fraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## JURISDICTION AND VENUE

4.      The investments offered and sold by Defendants are "securities" under Section 2(1) of the Securities Act [15 U.S.C. § 77b(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

5.      The Commission brings this action under Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] to temporarily, preliminarily, and permanently enjoin Defendants from future violations of the federal securities laws.

6.      This Court has jurisdiction over this action, and venue is proper, under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. §

78aa]. Prosper's principal office is in Dallas, and a number of Defendants' investors reside in Dallas.

7.  Defendants, directly or indirectly, made use of the means or instruments of transportation and communication, and the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein. Certain of the transactions, acts, practices, and courses of business occurred in the Northern District of Texas.

## STATEMENT OF FACTS

*Defendants*

8.  Defendant May, 45, resides in Dallas, Texas. May is the president of Prosper. Public records reveal that from 1983 to 2002, May was arrested 13 times for various criminal violations, including theft, theft by check, credit card abuse, revocation of probation and failure to appear. These arrests resulted in at least 14 convictions, with dispositions ranging from probation to 20-years imprisonment. Most recently, he was released from prison in or about 2007.

9.  Defendant Prosper is incorporated in multiple states including Texas, Arkansas, Oklahoma and Louisiana. Prosper is headquartered in Dallas, Texas. It purports to be an operator of oil-and-gas properties.

*Defendants' Fraud*

10.  From at least 2008, continuing to at least February 2010, Defendants advertised investment opportunities in oil-and-gas royalty interests. The advertisements appeared in various publications, including *The Wall Street Journal, Barron's, The Oklahoman, The Jewish Voice,* and *The Abilene Reporter*. They also appeared on the auction site eBay and in direct e-mails to

existing investors. In these advertisements and other communications with investors, Defendants claimed that the royalty interests for sale had yielded or would yield annual returns ranging from 25% to at least 38%. As a result of their solicitations, Defendants sold purported royalty interests to to at least 99 investors.

11.    Defendants have paid some returns to investors, but the vast majority of those returns have been *Ponzi* payments. The Commission has obtained and analyzed records for six bank accounts in which Prosper and May received investor funds and royalty revenues, and from which they made distributions to investors. Those records show that, during the period November 2008 through December 2009, Prosper received payments of approximately $107,000 from entities that appear to be oil-and-gas operators, but made distributions to investors totaling at least $840,000.

12.    The excess returns were paid from investor funds. For example, the bank records reflect that on December 12, 2008, the consolidated balance of the six accounts was $96.98. Between December 13 and December 30, 2008, $45,060 in investor funds was deposited in these accounts. During the same period, even though there were no deposits of oil-and-gas revenues to the accounts, Prosper/May appear to have made distributions to investors from the accounts totaling $12,755.68.

13.    Defendant falsely characterized the distributions they made to investors as returns on royalty interests from oil-and-gas production, when, in reality, they were mostly *Ponzi* payments.

14.    Records for the six accounts indicate that, in addition to making *Ponzi* payments, May or other Prosper employees used investor funds for various lavish personal expenses, including approximately $611,000 for vehicle purchases and expenses (including purchases by

*SEC v. May, et al.*
*Complaint*

Page 4 of 10

May of a Ferrari, a BMW and a Mercedes), $400,000 in credit card payments, $430,000 for meals, entertainment and retail purchases, $324,000 in travel expenses, and $89,000 in cash withdrawals. In addition, during the scheme, May and Prosper acquired multiple houses and condominiums, including homes in Dallas, each valued at approximately $1.5 million. May also caused $611,000 in investor funds to be transferred to his personal bank accounts. As of December 31, 2009, only about $220,000 remained in the bank accounts for which the Commission currently has records.

15.    In offering and selling the securities, Defendants did not provide potential investors with private placement memoranda or similar materials. In their advertisements and communications with investors, Defendants did not disclose the risks associated with oil-and-gas investments. Defendants also did not disclose that they intended to pay returns to investors using the principal payments of other investors. And of course, Defendants did not tell investors that they had spent and were continuing to spend investor proceeds to fund extravagant lifestyles.

## FIRST CLAIM

### Violations of Section 17(a) of the Securities Act

16.    Plaintiff Commission re-alleges and incorporates paragraphs 1 through 15 of this Complaint by reference as if set forth *verbatim*.

17.    Defendants, directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have:  (a) employed devices, schemes, and artifices to defraud;  (b) obtained money or property by means of untrue statements of a material fact and omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they

*SEC v. May, et al.*                                                    Page 5 of 10
*Complaint*

were made, not misleading; and (c) engaged in transactions, practices, and courses of business

which operate or would operate as a fraud and deceit upon the purchasers.

18.    As a part of and in furtherance of their scheme, the Defendants, directly and

indirectly, prepared, disseminated, or used advertisements, contracts, promotional materials, and

investor and other correspondence, which contained untrue statements of material facts and

misrepresentations of material facts, and which omitted to state material facts necessary in order

to make the statements made, in light of the circumstances under which they were made, not

misleading, including, but not limited to, those set forth in Paragraphs 1 through 15 above.

19.    Defendants made the above-referenced misrepresentations and omissions

knowingly or with severe recklessness regarding the truth.

20.    By reason of the foregoing, the Defendants have violated and, unless enjoined,

will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

21.    Plaintiff Commission re-alleges and incorporates paragraphs 1 through 15 of this

Complaint by reference as if set forth *verbatim*.

22.    The Defendants, directly or indirectly, singly or in concert with others, in

connection with the purchase or sale of securities, by use of the means and instrumentalities of

interstate commerce and by use of the mails have:  (a) employed devices, schemes, and artifices

to defraud;  (b) made untrue statements of a material fact and omitted to state a material fact

necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading; and  (c)  engaged in acts, practices, and courses of business which

operate or would operate as a fraud and deceit upon purchasers, prospective purchasers, and any other persons.

23.     As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated, or used advertisements, contracts, promotional materials, and investor and other correspondence, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 15 above.

24.     The Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

25.     By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM

#### Violations of Section 5(a) and 5(c) of the Securities Act

26.     Plaintiff Commission repeats and realleges paragraphs 1 through 15 of this Complaint and incorporated herein by reference as if set forth verbatim.

27.     Defendants, directly or indirectly, singly and in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been, directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the

purpose of sale and for delivery after sale; and (c) making use of the means or instruments of

transportation and communication in interstate commerce and of the mails to offer to sell such

securities.

28.    As described in this Complaint, Defendants offered and sold securities to the

public through general solicitations of interest.  No registration statement has been filed with the

Commission or is otherwise in effect with respect to these securities.

29.    For these reasons, Defendants have violated and, unless enjoined, will continue to

violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## **RELIEF REQUESTED**

Therefore, Plaintiff respectfully requests that this Court:

### **I.**

Preliminarily and Permanently enjoin Defendants from violating Sections 5(a), 5(c) and

17(a) of the Securities Act [15 U.S.C. §§ 77e and 77q(a)] and Section 10(b) of the Exchange Act

[15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### **II.**

Enter an Order immediately freezing the assets of Defendants and directing that all

financial or depository institutions comply with the Court's Order.

### **III.**

Order the appointment of a receiver to recover, preserve and distribute funds and assets

for the benefit of investors.

### **IV.**

Enter an Order against Defendants prohibiting the destruction of documents and

permitting the parties to take expedited discovery.

## V.

Order the Defendants to disgorge an amount equal to the funds and benefits they obtained illegally, or to which they are otherwise not entitled, as a result of the violations alleged, plus prejudgment interest on that amount.

## VI.

Order the Defendants to pay civil monetary penalties in an amount determined as appropriate by the Court under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] for the violations alleged herein.

## VII.

Order such further relief as this Court may deem just and proper.

Dated:  March 2, 2010

Respectfully submitted,

JASON C. RODGERS
Texas Bar No. 24005540
TOBY M. GALLOWAY
Texas Bar No. 00790733
United States Securities and
    Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 978-1410
(817) 978-3049 (facsimile)
rodgersj@sec.gov

Of Counsel:
JONATHAN P. SCOTT
DC Bar No. 456930
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX  76102-6882



U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

MAR -2 PM

DEPUTY CLERK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § |
| | § |
| Plaintiff, | § |
| | § |
| | § |
| | § |
| ALAN TODD MAY and | § |
| PROSPER OIL & GAS, INC. a/k/a | § |
| PROSPER ENERGY, INC. | § |
| | § |
| | § |
| | § |
| | § |
| Defendants. | § |
| | § |

3-10CV-425-L

Civil Action No.:

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER, ASSET FREEZE, APPOINTMENT OF A RECEIVER, AND OTHER EMERGENCY AND PRELIMINARY RELIEF

JASON C. RODGERS
Texas Bar No. 24005540
TOBY M. GALLOWAY
Texas Bar No. 00790733
United States Securities and
  Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 978-1410
(817) 978-3049 (facsimile)
rodgersj@sec.gov

# TABLE OF CONTENTS

Table of Contents ..................................................................................................... i

Table of Authorities ........................................................................................... ii-v

I.    INTRODUCTION ........................................................................................... 1

II.   DEFENDANTS ............................................................................................... 2

      A.    Defendant May .................................................................................... 2

      B.    Defendant Prosper ............................................................................... 2

III.  STATEMENT OF FACTS ............................................................................. 2

IV.   LEGAL DISCUSSION AND ARGUMENT ................................................... 4

      A.    The Royalty Interests Defendants Sold Investors Are Securities ........... 4
      B.    Defendants Violated Sections 5(a) and 5(c) of the Securities Act .......... 5
      C.    Defendants Violated Section 17(a) of the Securities Act, Section 10(b) of the
            Exchange Act and Rule 10b-5 ............................................................. 6

VI.   RELIEF REQUESTED ................................................................................... 7

      A.    The Court Should Issue a Temporary Restraining Order *Ex Parte* and a
            Preliminary Injunction ......................................................................... 7

      B.    The Court Should Order Ancillary Relief .............................................. 9

            1.    Order Freezing Assets, Requiring Document Preservation and
                  Expedited Discovery .................................................................. 9

            2.    Appointment of a Receiver ........................................................ 10

VII.  CONCLUSION ............................................................................................... 11

# TABLE OF AUTHORITIES

## - FEDERAL CASES

871 F.2d 1210 (3d Cir. 1989)..................................................................................9

*Aaron v. SEC,*
    446 U.S. 680 (1980).......................................................................................6

*Adena Exploration v. Sylvan,*
    860 F.2d 1242 (5th Cir. 1988) .....................................................................4

*Basic, Inc. v. Levinson,*
    485 U.S. 224 (1988).......................................................................................6

*Bookout v. Atlas Finance Corp.,*
    395 F. Supp. 1338 (N.D. Ga. 1974), *aff'd,* 514 F.2d 757 (5th Cir. 1975)....................10

*Broadcast v. Rockwell International Corp.,*
    642 F.2d 929 (5th Cir.), *cert. denied,* 454 U.S. 965 (1981)...........................7

*CFTC v. Muller,*
    570 F.2d 1296 (5th Cir. 1978) ................................................................9, 10

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976).......................................................................................6

*First Technology Safety Systems, Inc. v. Depinet,*
    11 F.3d 641 (6th Cir. 1993) .........................................................................8

*SEC v. Blatt,*
    583 F.2d 1325 (5th Cir. 1978) .....................................................................9

*SEC v. Bonastia,*
    614 F.2d 908 (3d Cir.1980)..........................................................................8

*SEC v. Commonwealth Chemical Sec., Inc.,*
    574 F.2d 90 (2d. Cir. 1978)..........................................................................8

*SEC v. Comserv Corp.,*
    908 F.2d 1407 (8th Cir. 1990) .....................................................................8

*SEC v. Continental Tobacco Co. of South Carolina,*
    463 F.2d 137 (5th Cir. 1972) .......................................................................5

*SEC v. First Finance Group of Tex.,*

645 F.2d 429 (5th Cir. 1981) .................................................................7, 10

*SEC v. Keller Corp.,*
323 F.2d at 402-03 ............................................................................7

*SEC v. Management Dynamics, Inc.,*
515 F.2d 801 (2d Cir. 1975)...............................................................7

*SEC v. Manor Nursing Centers, Inc.,*
458 F.2d 1082 (2d Cir. 1972)..............................................................9

*SEC v. Materia,*
745 F.2d 197 (2d. Cir. 1984)...............................................................10

*SEC v. Opulentica,*
479 F. Supp. 2d 319 (S.D.N.Y. 2007)................................................5, 6

*SEC v. R. J. Allen & Associates, Inc.,*
386 F. Supp. 866 (S.D. Fla. 1974) .................................................9, 10

*SEC v. Ralston Purina Co.,*
346 U.S. 119 (1953)...........................................................................5

*SEC v. United Finance Group, Inc.,*
474 F.2d 354 (9th Cir. 1973) .............................................................7

*SEC v. Vaskevitch,*
657 F. Supp. 312 (S.D.N.Y. 1987) .....................................................9

*SEC v. W.J. Howey Co.,*
328 U.S. 293 (1946)...........................................................................4

*SEC v. Unifund SAL,*
910 F.2d 1028 (2d Cir. 1990)......................................................7, 9, 10

*United States v. Mansion House Center N. Redevelopment Co.,*
419 F. Supp. 85 (E.D. Mo. 1976).......................................................10

*United States v. Cannistraro,*
694 F. Supp. 62 (D.N.J. 1988), *aff'd in part, vacated in part on other
grounds,* 871 F.2d 1210 (3d Cir. 1989) .............................................9

# FEDERAL STATUTES

Rule 10b-5 of the Exchange Act of 1934 [17 C.F.R. § 240.10b-5] ................................6, 7

Rules 504-506 [17 C.F.R. §§ 230.504-230.506] ................................................6

Section 2(a)(1) of the Securities Act of 1933 [15 U.S.C. § 77b(a) 1] .................................4

Section 3(a)(10) of the Exchange Act of 1934 [15 U.S.C. § 78c(a)10] ..............................4

Section 3(a)(11) of the Securities Act of 1933 [15 U.S.C. § 77c(a)11] .............................6

Section 4(2) of the Securities Act of 1933 [15 U.S.C. § 77d] .........................................5

Section 5(a) of the Securities Act of 1933 [15 U.S.C. § 77e(a)] ......................................5

Section 5(c) of the Securities Act of 1933 [15 U.S.C. § 77e(c)] ......................................5

Section 10(b) of the Exchange Act of 1934 [15 U.S.C. § 78j(b)] ...................................6, 7

Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)] ....................................6

Section 17(a)(1) of the Securities Act of 1933 [15 U.S.C. § 77q(a)(1)] ..........................6, 7

Section 17(a)(2) of the Securities Act of 1933 [15 U.S.C. § 77q(a)(2)] ..........................6, 7

Section 17(a)(3) of the Securities Act of 1933 [15 U.S.C. § 77q(a)(3)] ..........................6, 7

Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] .............................................7

Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] ............................................7

# MISCELLANEOUS

12 C. WRIGHT, A. MILLER & R. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2983 at 23-24 (2d ed. 1997) ..................................................................10

## I.    INTRODUCTION

Plaintiff United States Securities and Exchange Commission ("Commission") submits this Memorandum of Law in Support of Motion For *Ex Parte* Temporary Restraining Order, Asset Freeze, Appointment of a Receiver, and Other Emergency and Preliminary Relief (hereinafter "Memorandum") to halt ongoing violations of the law and to protect the Commission's ability to recover investor funds obtained illegally in a fraudulent securities scheme perpetrated by Defendant Alan Todd May ("May") and Prosper Oil & Gas, Inc. a/k/a Prosper Energy, Inc. ("Prosper") (collectively, "Defendants").

Since at least 2008, through the present, May, a felon with a long criminal history of theft and fraud, and his company Prosper, have raised at least $6 million from at least 99 investors throughout the United States in fraudulent offerings of securities.  The securities that Defendants offered and sold investors are royalty interests in oil-and-gas properties.  Defendants told investors that they were selling royalty interests in "hot propert[ies]" with historic and anticipated annual returns on the royalty interests ranging from 25% to at least 38%.  Defendants made some distributions to investors, but to do so, they used money they raised from other investors to fund the bulk of the payments – *i.e.*, *Ponzi* payments.  Defendant falsely characterized the distributions they made to investors as returns on royalty interests from oil-and-gas production, when, in reality, they were mostly *Ponzi* payments.  Defendants never registered their securities transactions with the Commission.

The citations in this Memorandum refer to pages from the attached Appendix, which consists of sworn declarations with supporting materials from Ty S. Martinez, an accountant on the Commission's staff, and Jennifer Irlbeck, an attorney with the Texas State Securities Board.[1]

---

[1]    Ms. Irlbeck's declaration appears as Exhibit 2 to Mr. Martinez's declaration [App. at 53].

## II.    DEFENDANTS

**A.    Defendant May**, a resident of Dallas, Texas, is the president of Prosper. Public records reveal that from 1983 to 2002, May was arrested at least 13 times for various criminal violations, including theft, theft by check, credit card abuse, revocation of probation and failure to appear. [App at 10 ¶ 17]. These arrests resulted in at least 14 convictions, with dispositions ranging from probation to 20-years imprisonment. [Id.]. He was released from prison in 2007. [Id.].

**B.    Defendant Prosper** is incorporated in multiple states including Texas, Arkansas, Oklahoma and Louisiana. [App at 4 ¶ 4]. Prosper is headquartered in Dallas, Texas. [Id.]. It purports to be an operator of oil-and-gas properties. [Id.].

## III.    STATEMENT OF FACTS

From at least 2008, continuing to at least February 2010, May, directly and through Prosper, has advertised investment opportunities in oil-and-gas royalty interests. The advertisements appeared in various publications, including *The Wall Street Journal*, *Barron's*, *The Oklahoman*, *The Jewish Voice*, and *The Abilene Reporter*. [App at 4-5 ¶¶ 5-6]. They also appeared on the auction site eBay and in direct e-mails to existing investors. [App at 4, 8 ¶¶ 5, 10]. As a result of their solicitations, Defendants sold purported royalty interests to at least 99 investors. [App at 7 ¶ 7].

In these advertisements and other communications with investors, Defendants claimed that the royalty interests for sale had yielded or would yield annual returns ranging from 25% to at least 38%. [App at 4, 8 ¶¶ 5, 10]. Defendants have paid some returns to investors, but the vast majority of those returns have been *Ponzi* payments. The Commission has obtained and analyzed records for six bank accounts in which Prosper and May received investor funds and

*SEC v. May, et al.*
MEMO OF LAW

2

royalty revenues, and from which they made distributions to investors. [App at 6-8 ¶¶ 7-9]. Those records show that, during the period November 2008 through December 2009, Prosper received payments of approximately $107,000 from entities that appear to be oil-and-gas operators, but made distributions to investors totaling at least $840,000. [Id.].

The excess returns were paid from investor funds. [App at 8 ¶ 9]. For example, the bank records reflect that on December 12, 2008, the consolidated balance of the six accounts was $96.98. [Id.]. Between December 13 and December 30, 2008, $45,060 in investor funds was deposited in these accounts. [Id.]. During the same period, even though there were no deposits of oil-and-gas revenues to the accounts, Prosper/May appear to have made distributions to investors from the accounts totaling $12,755.68. [Id.].

Records for the six accounts indicate that, in addition to making Ponzi payments, May or other Prosper employees used investor funds for various lavish personal expenses, including approximately $611,000 for vehicle purchases and expenses (including purchases by May of a Ferrari, a BMW and a Mercedes), $400,000 in credit card payments, $430,000 for meals, entertainment and retail purchases, $324,000 in travel expenses, and $89,000 in cash withdrawals. [App at 7 ¶ 8].   In addition, during the scheme, May and Prosper acquired multiple houses and condominiums, including homes in Dallas, each valued at approximately $1.5 million. [App. at 9 ¶ 14]. May also caused $611,000 in investor funds to be transferred to his personal bank accounts. [App. at 7 ¶ 8]. As of December 31, 2009, only about $220,000 remained in the bank accounts for which the Commission currently has records. [App. at 7 ¶ 7].

In offering and selling the securities, Defendants did not provide potential investors with private placement memoranda or similar materials. [App at 11 ¶ 18]. In their advertisements and communications with investors, Defendants did not disclose the risks associated with oil-

*SEC v. May, et al.*
MEMO OF LAW

and-gas investments. [App at 4-5, 11 ¶¶ 5, 6, 18]. Defendants also did not disclose that they intended to pay returns to investors using the principal payments of other investors. [Id.]. And of course, Defendants did not tell investors that they had spent and were continuing to spend investor proceeds to fund extravagant lifestyles. [App at 11 ¶ 18].

## IV.   LEGAL DISCUSSION AND ARGUMENT

### A.   The Royalty Interests Defendants Sold Investors Are Securities

Under both the statutory definitions of a "security," and the common-law test for investment contracts, the royalty interests Defendants offered and sold were securities. Defendants assigned investors fractional interests in oil-and-gas royalties. [App at 9 ¶ 12]. A "fractional undivided interest in oil, gas, or other mineral rights" is a security. Securities Act of 1933 ("Securities Act") § 2(a)(1); Securities Exchange Act of 1934 ("Exchange Act") § 3(a)(10); *see also Adena Exploration v. Sylvan*, 860 F.2d 1242, 1252-53 (5th Cir. 1988) ("if a financial instrument is properly denominated a 'fractional interest in oil and gas,' then the instrument is necessarily a security").

The interests offered and sold by Defendants are also investment contracts, which are also defined as securities under Section 2(a)(1) of the Securities Act and 3(a)(10) of the Exchange Act. In *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946), the Supreme Court defined an investment contract as a contract, transaction or scheme whereby (1) a person invests his money (2) in a common enterprise and (3) is led to expect profits solely from the efforts of the promoter or a third party. *Howey*, 328 U.S. at 298-99. The royalty interests Defendants sold meet the *Howey* test for investment contracts because they represent investments in common oil-and-gas enterprises pursuant to which investors expected to receive passive income.

**B.    Defendants Violated Sections 5(a) and 5(c) of the Securities Act**

Absent an exemption from registration, Sections 5(a) and 5(c) of the Securities Act

prohibit any person from offering or selling a security in interstate commerce unless a

registration statement is filed or in effect. A *prima facie* case for a violation of Section 5 is

established by showing that: (1) no registration statement was filed or in effect as to the

securities; (2) the defendants, directly or indirectly, sold or offered to sell the securities; and (3)

interstate transportation or communication or the mails were used in connection with the offer or

sale. *SEC v. Continental Tobacco Co. of South Carolina,* 463 F.2d 137, 155 (5th Cir. 1972).

Once the Commission establishes a *prima facie* case, the defendants assume the burden of

proving that the securities offered qualified for a registration exemption. *SEC v. Ralston Purina*

*Co.,* 346 U.S. 119, 126 (1953).

Defendants never filed a registration statement for their securities transaction with

investors. [App at 11 ¶ 18].  May directly, and through Prosper, offered the securities. [App at 4-

5, 8 ¶¶ 4-6, 10].   Furthermore, May and Prosper used the facilities of interstate commerce and

the mails to solicit investors.  [App at 4 ¶ 4].  These facts establish a *prima facie* case.

Prosper's offering does not qualify for an exemption from registration.  The "private

placement" exemption contained in Section 4(2) [15 U.S.C. § 77d] of the Securities Act for

transactions not involving public offerings does not apply, because Defendants offered and sold

securities through general solicitations using classified and online advertisements.  [App at 4-5

¶¶ 5-6].  *See SEC v. Opulentica,* 479 F.Supp.2d 319, 328 (S.D.N.Y. 2007) ("Because …

defendants offered to sell securities to the public by soliciting sales on their website and

advertising in newspapers, they are not entitled to an exemption under section 4(2) of the

Securities Act[.]").

*SEC v. May, et al.*                                                                                                 5
MEMO OF LAW

The various exemptions under Regulation D of the Securities Act, embodied in Rules 504-506 [17 C.F.R. §§ 230.504-230.506], are also unavailable. Rule 504 does not apply because the total offering exceeded the $1 million maximum offering amount, *Opulentica,* 479 F.Supp.2d at 328, and Defendants did not register their securities offerings with state securities regulators, as required by state law for sales to unaccredited investors. [App at 11 ¶ 18]. *See* Securities Act Rel. No. 33-7644. Rules 505 and 506 do not apply because Defendants used general solicitations to solicit investors. *Opulentica,* 479 F.Supp.2d at 328. Lastly, because Defendants offered securities to investors nationwide, the intrastate exemption provided by Section 3(a)(11) of the Securities Act is also unavailable.

## C.    Defendants Violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5

Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit the employment of a fraudulent scheme or the making of material misrepresentations and omissions in the offer or sale, or in connection with the purchase and sale, of any security. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197 (1976). In order to prove a violation under these provisions, it must be shown that the alleged misrepresentations or omitted facts were material. Information is deemed material upon a showing that there is a substantial likelihood that the omitted facts would have assumed significance in the investment deliberations of a reasonable investor. *Basic, Inc. v. Levinson,* 485 U.S. 224 (1988).

Establishing violations of Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder requires a showing of *scienter. Aaron v. SEC,* 446 U.S. 680 (1980). Actions pursuant to Sections 17(a)(2) and (3) of Securities Act do not require such a showing. *Id. Scienter* is the "mental state embracing intent to deceive, manipulate or defraud." *Hochfelder,* 425 U.S. at 193. The Fifth Circuit has held that *scienter* is established by

a showing that the defendants acted intentionally or with severe recklessness. *See Broad v. Rockwell Int'l Corp.*, 642 F.2d 929 (5th Cir.) (*en banc*), *cert. denied*, 454 U.S. 965 (1981).

Defendants violated the above antifraud provisions. Defendants made false and misleading statements or omitted material information concerning the source and nature of investor "returns" and the use of investor funds. Defendants never disclosed to investors that they intended to make or had paid distributions to investors using *Ponzi* payments, and Defendants falsely characterized the *Ponzi* payments investors received as returns on royalty payments from oil-and-gas production. These facts demonstrate that May acted with a high degree of *scienter*, which may be imputed to Prosper. Thus, Defendants violated Securities Act Sections 17(a)(1), (2), and (3) and Exchange Act Section 10(b) and Rule 10b-5 thereunder.

## VI.    RELIEF REQUESTED

### A.    The Court Should Issue a Temporary Restraining Order *Ex Parte* and a Preliminary Injunction

Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] authorize the Commission to seek and direct the courts to enter "a permanent or temporary injunction or restraining order" upon a "proper showing" that the defendant "is engaged or is about to engage" in violations of the securities laws.

When the Commission has established a *prima facie* showing of violations and the likelihood that such violations will continue, issuance of an order of preliminary injunction is appropriate. *SEC v. First Fin. Group of Tex.* 645 F.2d 429, 434-35 (5th Cir. 1981); *SEC v. United Fin. Group, Inc.*, 474 F.2d 354, 358 (9th Cir. 1973); *SEC v. Keller Corp.*, 323 F.2d at 402-03. Unlike private litigants, the Commission is not required to show a risk of irreparable injury or a balance of equities in its favor. *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975); *Unifund*, 910 F.2d 1028, 1036 (2nd Cir. 1990). In analyzing the need for injunctive relief,

courts focus on whether there is a reasonable likelihood that the defendant, if not enjoined, will engage in future illegal conduct. *See, e.g., SEC v. Comserv Corp.*, 908 F.2d 1407, 1412 (8th Cir. 1990); *SEC v. Bonastia*, 614 F.2d 908 (3d Cir. 1980).

As set forth above, the Commission has adduced compelling evidence of securities fraud, and there is a substantial likelihood that the Commission will succeed on the merits of its enforcement action against Defendants. Moreover, injunctive relief is warranted in this case because the facts indicate a strong likelihood of future violations. The likelihood that a defendant will repeat violative conduct is measured by among other things, the degree of *scienter*, the repetitiveness of his violative conduct, and the opportunity his occupation affords to repeat the violative conduct. *SEC v. Commonwealth Chemical Sec., Inc.*, 574 F.2d 90, 99-101 (2d. Cir. 1978) (assessing likelihood of future violations warranting permanent injunction).

All these factors call for preliminary injunctive relief against May and Prosper. Defendants' violations have been egregious. They have defrauded at least 99 victims in a multi-million-dollar securities-fraud scheme. Defendants' violations were not isolated. Rather, they were nationwide and widespread, repeatedly ensnaring new victims into the scheme. Defendants operated with *scienter* in the extreme, particularly in view of their extensive use of *Ponzi* payments. Finally, Defendants continue to have opportunities to engage in future violations. May currently operates Prosper, and Defendants continue to advertise bogus securities offerings. Moreover, May has an extensive criminal history of fraudulent activity. Absent an injunction, Defendants will continue to violate the securities laws. Given the sum of these circumstances, injunctive relief is fully warranted.

*Ex Parte* relief is appropriate when notice to the opposing party could render fruitless further prosecution of the action. *First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641,

650-51 (6th Cir. 1993). The Defendants hold investor funds and assets acquired in exchange for investor funds. Given notice, these assets could be rapidly dissipated or hidden, potentially rendering fruitless the Commission's efforts to recover assets for victims.

**B.    The Court Should Order Ancillary Relief**

        **1.    Orders Freezing Assets, Requiring Document Preservation, and Expediting Discovery**

Federal courts have broad equitable powers enabling them to fashion appropriate ancillary remedies necessary to grant full relief. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103-4 (2d Cir. 1972); *SEC v. Blatt*, 583 F.2d 1325, 1335-1336 (5th Cir. 1978). The Court should freeze the Defendants' assets based on the misconduct described above. Such an order is appropriate to prevent dissipation pending an assessment of the assets' value and liquidity and their return to investors. *See, e.g., Manor Nursing Centers, Inc.*, at 1106. The Defendants' wrongdoing amply demonstrates that they should not be entrusted with investor funds.

An asset freeze is also appropriate to assure satisfaction of whatever equitable relief the Court ultimately may order. *Id.*; *CFTC v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978). Additionally, an asset freeze "facilitate(s) enforcement of any disgorgement remedy that might be ordered" and may be granted "even in circumstances where the elements required to support a traditional SEC injunction have not been established." *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990). Courts recognize that an asset freeze is sometimes necessary to ensure that a future disgorgement order will have effect. *See, e.g., U.S. v. Cannistraro*, 694 F. Supp. 62, 71 (D.N.J. 1988), *aff'd in part, vacated in part on other grounds*, 871 F.2d 1210 (3d Cir. 1989); *SEC v. Vaskevitch*, 657 F. Supp. 312, 315 (S.D.N.Y. 1987); *SEC v. R. J. Allen & Associates, Inc.*, 386 F. Supp. 866, 881 (S.D. Fla. 1974).

To obtain an asset freeze, the Commission need not show a reasonable likelihood of future violations. *Muller*, 570 F.2d at 1300. Its burden is lower than that of a preliminary injunction because an asset freeze only preserves the *status quo. Unifund SAL*, 910 F.2d at 1039.

In addition, the Court should enter an order prohibiting the movement, alteration, and destruction of books, records, accounts and other documents related to this action to prevent the spoliation of evidence before the Commission's claims can be adjudicated. And to more fully ascertain the extent of the Defendants' misconduct, the Court should order expedited discovery in anticipation of a hearing on the Commission's request for a preliminary injunction. These orders will assure that whatever equitable relief might ultimately be granted is available and meaningful. *See R. J. Allen & Assocs., Inc.*, 386 F. Supp. at 881.

### 2.    Appointment of a Receiver

As set forth above, pursuant to their general equity powers, courts may order ancillary relief to effectuate the purposes of the federal securities laws, to preserve defendants' assets and to ensure that wrongdoers do not profit from their unlawful conduct. In this regard, the power of the district court to appoint a receiver to marshal and preserve assets and perfect property rights is well-established. *SEC v. Materia*, 745 F.2d 197 (2d. Cir. 1984); *SEC v. First Financial* Group, 645 F.2d 429, 438 (5th Cir. 1981). *See also* 12 C. Wright, A. Miller & R. Marcus, "Federal Practice & Procedure" §2983 at 23-24 (2d ed. 1997). An evidentiary hearing is not required on Plaintiff's request to appoint a receiver where the record discloses sufficient facts to warrant such an appointment. *Bookout v. Atlas Fin. Corp.*, 395 F. Supp. 1338, 1342 (N.D. Ga. 1974), *aff'd*, 514 F.2d 757 (5th Cir. 1975); *United States v. Mansion House Center N. Redevelopment Co.*, 419 F. Supp. 85, 87 (E.D. Mo. 1976).

The evidence presented here establishes that Defendants have misused substantial sums of investor funds and are in possession of assets acquired with investor funds that are at risk of disappearing any moment. Under these circumstances, the appointment of a receiver to marshal, conserve, and hold Defendants' and other property traceable to their fraud is essential to providing meaningful restitution to investors.

## VII.   CONCLUSION

Based on the foregoing facts and for the reasons set forth above, the Commission respectfully requests that the Count enter orders providing the relief requested.

Dated and signed on the 2nd day of March 2010.

Respectfully submitted,

JASON C. RODGERS
Texas Bar No. 24005540
TOBY M. GALLOWAY
Texas Bar No. 00790733
United States Securities and
  Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 978-1410
(817) 978-3049 (facsimile)
rodgersj@sec.gov

Of Counsel:
JONATHAN P. SCOTT
DC Bar No. 456930
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX  76102-6882

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| **ALAN TODD MAY and** | § | No.: 3:10-CV-0425-L |
| **PROSPER OIL & GAS, INC. a/k/a** | § | |
| **PROSPER ENERGY, INC. ,** | § | **EX PARTE** |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORDER APPOINTING RECEIVER

This matter came before me, the undersigned United States District Judge, this 3rd day of March 2010, on the application of Plaintiff Securities and Exchange Commission ("Commission") for the appointment of a Receiver for Defendants Alan Todd May ("May") and Prosper Oil & Gas, Inc. a/k/a Prosper Energy, Inc. ("Prosper") (collectively, "Defendants"). In contemplation of the eventual return of assets to investors harmed by the misconduct alleged in the Complaint, it appears that this Order Appointing Receiver for Defendants is both necessary and appropriate to marshal, conserve, hold and, where necessary, operate their assets pending further order of the court.

IT IS THEREFORE ORDERED that:

1.     This court assumes exclusive jurisdiction and takes possession of the assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges (with regard to the entities),


EXHIBIT
B

of the Defendants and all entities they own or control ("Receivership Assets"), and the books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers, telephones, personal digital devices and other informational resources of or in possession of Defendants, or issued by Defendants and in possession of any agent or employee of Defendants ("Receivership Records").

2.      Kelly Crawford, Esq., of the law firm Scheef & Stone, L.L.P. (500 N. Akard St., Ste. 2700, Dallas, Texas 75201); (www.solidcounsel.com); telephone (214) 706-4213) is hereby appointed Receiver for the Receivership Assets and Receivership Records (collectively, "Receivership Estate"), with the full power of an equity receiver under common law as well as such powers as are enumerated herein as of the date of this order.  Within five days hereof, the Receiver shall file with the clerk of this court a bond in the sum of $25,000, without need for sureties approved by the court, to assure his conscientious performance of the duties and responsibilities imposed by this order.

3.      The duties of the Receiver shall be specifically limited to matters relating to the Receivership Estate and unsettled claims thereof remaining in the possession of the Receiver as of the date of this order.  Nothing in this order shall be construed to require further investigation of Receivership Estate assets heretofore liquidated or distributed or claims of the Receivership Estate settled prior to issuance of this order.  This paragraph shall not be construed to limit the powers of the Receiver in any regard with respect to transactions that may have occurred prior to the date of this order.

4.      Until the expiration date of this order or further order of this court, Receiver is authorized to immediately take and have complete and exclusive control, possession, and

**Order Appointing Receiver – Page 2**

custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate.

5.      As of the entry of this order, the Receiver is specifically directed and authorized to perform the following duties:

(a)      Maintain full control of the Receivership Estate with the power to retain or remove, as the Receiver deems necessary or advisable, any officer, director, independent contractor, employee, or agent of the Receivership Estate;

(b)      Collect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated, the income and profit therefrom and all sums of money now or hereafter due or owing to the Receivership Estate with full power to collect, receive, and take possession of, without limitation, all goods, chattel, rights, credits, monies, effects, lands, leases, books and records, work papers, records of account, including computer maintained information, contracts, financial records, monies on hand in banks and other financial initiations, and other papers and documents of other individuals, partnerships, or corporations whose interests are now held by or under the direction, possession, custody, or control of the Receivership Estate;

(c)      Institute such actions or proceedings to impose a constructive trust, obtain possession, or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate. All such actions shall be filed in this court;

(d)      Obtain, by presentation of this order, documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or

**Order Appointing Receiver – Page 3**

entity sufficient to identify accounts, properties, liabilities, causes of action, or employees of the Receivership Estate. The attendance of a person or entity for examination and/or production of documents may be compelled in a manner provided in Rule 45 of the Federal Rules of Civil Procedure, or as provided under the laws of any foreign country where such documents, books, records, accounts, deposits, or testimony may be located;

(e)    Without breaching the peace and, if necessary, with the assistance of local peace officers or United States marshals to enter and secure any premises, wherever located or situated, in order to take possession, custody, or control of, or to identify the location or existence of, Receivership Estate assets or records;

(f)    Make such ordinary and necessary payments, distributions, and disbursements from the Receivership Estate as the Receiver deems advisable or proper for the marshaling, maintenance, or preservation of the Receivership Estate. Receiver is further authorized to contract and negotiate with any claimants against the Receivership Estate (including, without limitation, creditors) for the purpose of compromising or settling any claim. To this purpose, in those instances in which Receivership Estate assets serve as collateral to secured creditors, the Receiver has the authority to surrender such assets to secured creditors, conditional upon the waiver of any deficiency of collateral;

(g)    Perform all acts necessary to conserve, hold, manage, and preserve the value of the Receivership Estate, in order to prevent any irreparable loss, damage, and injury to the Estate;

(h)    Enter into such agreements in connection with the administration of the Receivership Estate, including, but not limited to, the employment of such managers,

agents, custodians, consultants, investigators, attorneys, and accountants as Receiver judges necessary to perform the duties set forth in this order and to compensate them from the Receivership Assets;

(i)    Institute, prosecute, compromise, adjust, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve the value of the Receivership Estate, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this order and likewise to defend, compromise, or adjust or otherwise dispose of any or all actions or proceedings instituted against the Receivership Estate that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this order;

(j)    Preserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursement thereof to claimants;

(k)    Promptly provide the United States Securities and Exchange Commission and other governmental agencies with all information and documentation they may seek in connection with their regulatory or investigatory activities;

(l)    Prepare and submit periodic reports to this court and to the parties as directed by this court; and

(m)    File with this court requests for approval of reasonable fees to be paid to the Receiver and any person or entity retained by him and interim and final accountings for any reasonable expenses incurred and paid pursuant to order of this court. Such fees and expenses shall be paid from the Receivership Estate.

6.      Upon the request of the Receiver, the United States Marshal is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody, or control of, or identify the location of, any Receivership Estate assets or records.

7.      Creditors and all other persons are hereby **restrained and prohibited** from the following actions, except in this court, unless this court, consistent with general equitable principals and in accordance with its ancillary equitable jurisdiction in this matter, orders that such actions may be conducted in another forum or jurisdiction:

(a)      The commencement or continuation, including the issuance or employment of process, of any judicial, administrative, or other proceeding against the Receiver, any of the defendants, the Receivership Estate, or any agent, officer, or employee related to the Receivership Estate, arising from the subject matter of this civil action; or

(b)      The enforcement, against the Receiver, or any of the defendants, of any judgment that would attach to or encumber the Receivership Estate that was obtained before the commencement of this proceeding.

8.      Creditors and all other persons are hereby **restrained and prohibited**, without prior approval of the court, from:

(a)      Any act to obtain possession of the Receivership Estate assets;

(b)      Any act to create, perfect, or enforce any lien against the property of the Receiver, or the Receivership Estate;

(c)      Any act to collect, assess, or recover a claim against the Receiver or that would attach to or encumber the Receivership Estate; or

**Order Appointing Receiver – Page 6**

(d)     The set off of any debt owed by the Receivership Estate or secured by the Receivership Estate assets based on any claim against the Receiver or the Receivership Estate.

9.     Defendants, their respective officers, agents, and employees and all persons in active concert or participation with them who receive notice of this order by personal service or otherwise, including, but not limited to, any financial institution, broker-dealer, investment adviser, private equity fund or investment banking firm, and each of them, are hereby ordered, restrained, and enjoined from, directly or indirectly, making any payment or expenditure of any Receivership Estate assets that are owned by Defendants or in the actual or constructive possession of any entity directly or indirectly owned or controlled or under common control with the Receivership Estate, or effecting any sale, gift, hypothecation, assignment, transfer, conveyance, encumbrance, disbursement, dissipation, or concealment of such assets. A copy of this order may be served on any bank, savings and loan, broker-dealer, or any other financial or depository institution to restrain and prohibit any such institution from disbursing any of the Receivership Estate assets. Upon presentment of this order, all persons, including financial institutions, shall provide account-balance information, transaction histories, all account records and any other Receivership Records to the Receiver or his agents and to Commission counsel, in the same manner as they would be provided were the Receiver the signatory on the account.

10.     Defendants, and their respective agents, officers, and employees and all persons in active concert or participation with them are hereby **prohibited** from doing any act or thing whatsoever to interfere with the Receiver's taking control, possession, or management of the Receivership Estate or to in any way interfere with the Receiver or to harass or interfere with the duties of the Receiver or to interfere in any manner with the exclusive jurisdiction of this court

**Order Appointing Receiver – Page 7**

over the Receivership Estate, including the filing or prosecuting any actions or proceedings which involve the Receiver or which affect the Receivership Assets or Receivership Records, specifically including any proceeding initiated pursuant to the United States Bankruptcy Code, except with the permission of this court. Any actions so authorized to determine disputes relating to Receivership Assets and Receivership Records shall be filed in this court.

11.     Defendants, their respective officers, agents, and employees and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, including any financial institution, broker-dealer, investment adviser, private equity fund or investment banking firm, and each of them shall:

(a)     To the extent they have possession, custody, or control of same, provide immediate access to and control and possession of the Receivership Estate assets and records, including securities, monies, and property of any kind, real and personal, including all keys, passwords, entry codes, and all monies deposited in any bank deposited to the credit of the Defendants, wherever situated, and the original of all books, records, documents, accounts, computer printouts, disks, and the like of Defendants to Receiver or his duly authorized agents;

(b)     Cooperate with the Receiver and his duly authorized agents by promptly and honestly responding to all requests for information regarding Receivership Assets and Records and by promptly acknowledging to third parties the Receiver's authority to act on behalf of the Receivership Estate and by providing such authorizations, signatures, releases, attestations, and access as the Receiver or his duly authorized agents may reasonably request;

**Order Appointing Receiver – Page 8**

(c)    Transfer to the territory of the United States all Receivership Estate assets and records in foreign countries held either:  (1) by them, (2) for their benefit, or (3) under their control; and

(d)    Hold and retain all such repatriated Receivership Estate assets and documents and prevent any transfer, disposition, or dissipation whatsoever of any such assets or documents, until such time as they may be transferred into the possession of the Receiver.

12.    Any financial institution, broker-dealer, investment adviser, private equity fund or investment banking firm or person that holds, controls, or maintains accounts or assets of or on behalf of any Defendant, or has held, controlled, or maintained any account or asset of or on behalf of any Defendant since January 1, 2006, shall:

(a)    Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, gift, or other disposal of any of the assets, funds, or other property held by or on behalf of any Defendant in any account maintained in the name of or for the benefit of any Defendant in whole or in part except:

(i)    as directed by further order of this court, or

(ii)    as directed in writing by the Receiver or his agents;

(b)    Deny access to any safe deposit boxes that are subject to access by any Defendant; and

(c)    The Commission and Receiver may obtain, by presentation of this order, documents, books, records, accounts, deposits, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, liabilities,

causes of action, or employees of the Receivership Estate. The attendance of a person or entity for examination or production of documents may be compelled by the Commission or Receiver in a manner provided in Rule 45 of the Federal Rules of Civil Procedure, or as provided under the laws of any foreign country where such documents, books, records, accounts, deposits, or testimony may be located.

13.     Defendants, their officers, agents, and employees and all persons in active concert or participation with them and other persons who have notice of this order by personal service or otherwise, are hereby **restrained and prohibited** from destroying, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any contracts, accounting data, correspondence, advertisements, computer tapes, disks or other computerized records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns, and other documents or records of any kind that relate in any way to the Receivership Estate or are relevant to this action.

14.     The Receiver is hereby authorized to make appropriate notification to the United States Postal Service to forward delivery of any mail addressed to the Defendants, or any company or entity under the direction and control of the Defendants, to himself. Further, the Receiver is hereby authorized to open and inspect all such mail to determine the location or identity of assets or the existence and amount of claims.

15.     Nothing in this order shall prohibit any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Defendants their agents, officers, or employees.

**Order Appointing Receiver – Page 10**

16.    The court directs the clerk of the court to file this order **ex parte** and **under seal**.

**It is so ordered** this 3rd day of March, 2010.

Sam A. Lindsay
United States District Judge